CENTRIC–JONES COMPANY, a Colorado limited partnership; Nucon Construction Corp., a Colorado corporation; and J.A. Jones Construction Company, Petitioners,

v.

Judge Lynne M. HUFNAGEL, District Court Judge, and The Denver District Court, Respondents.

No. 92SA407.

Supreme Court of Colorado, En Banc.

March 29, 1993.

Durant D. Davidson, Cogswell and Davidson, Denver, for petitioners.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Maurice Knaizer, Dianne E. Eret, Asst. Attys. Gen., General Legal Services Section, Denver, for respondents.

Alan E. Epstein, Eugene R. Commander, Scott T. Erickson, Hall & Evans, Denver, for intervenor Parsons De Leuw, Inc.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Patricia S. Bangert, Deputy Atty. Gen., Jennifer L. Gimbel, First Asst. Atty. Gen., Lynn B. Obernyer, Asst. Atty. Gen., Natural Resources Section, Denver, for intervenor Colorado Dept. of Transp.

Justice MULLARKEY delivered the Opinion of the Court.

The petitioners, Centric–Jones Company and its general partners, Nucon Construction Corporation and J.A. Jones Construction Company, have brought an original proceeding before this court pursuant to C.A.R. 21. For purposes of this opinion, we will refer to all three petitioners as Centric. Centric asks us to compel the respondent trial court to order the clerk to enter judgment for it pursuant to its acceptance of an offer of judgment under section 13–17–202(3), 6A C.R.S. (1992 Supp.). Of concern in this case is whether the trial court was correct in finding that an entry of summary judgment in favor of one of the two defendants participating in a joint offer of judgment voids the offer. We issued a rule to show cause and now make the rule absolute, finding that the trial court erred as a matter of law.

## I.

In 1987, the Colorado Department of Highways, since renamed the Department of Transportation (CDOT), undertook a project involving the modification and reconstruction of certain ramps on the I–25/6th Avenue Interchange. CDOT hired a private engineering firm, De Leuw Cather & Co., since renamed Parsons De Leuw, Inc. (De Leuw), to prepare the design, as well as the plans and specifications, and review the shop drawings for this project. Centric was hired by CDOT as the general contractor to implement the plans as set forth by De Leuw.

Errors committed by De Leuw in the design and in reviewing shop drawings caused the project to fall behind schedule. As a result, in 1989, Fought & Company, Inc., Centric's subcontractor for the manufacture of the steel components needed in the project, brought suit and obtained a judgment against Centric for the damages it incurred due to the delay.

Centric then filed an independent action in 1991 against CDOT on grounds that, because of CDOT's wrongful conduct, Centric suffered damages in terms of additional costs incurred from the delay and the Fought judgment. The complaint was amended in March 1992 to include De Leuw as a defendant. In June, De Leuw filed a motion for summary judgment on the grounds that Centric's claims against it were barred by the statute of limitations. An offer of judgment was made jointly by De Leuw and CDOT on September 30, pursuant to section 13–17–202(3), 6A C.R.S. (1992 Supp.) which states in part:

At any time more than ten days before the trial begins, a party defending against a claim may serve upon the adverse party an offer of settlement to the effect specified in his offer, with costs then accrued. If within ten days after the service of the offer, the adverse party serves written notice that the offer is accepted, either party may then file the offer and notice of acceptance, together

with proof of service thereof, and thereupon the clerk shall enter judgment....[1]

The offer of judgment stated:

1. CDOT and De Leuw hereby make a joint offer of settlement, including any interest and costs to which plaintiff may be entitled as a matter of law, in the total amount of Seven Hundred Fifty Thousand and No/100 Dollars ($750,000) which shall be deemed withdrawn if this offer is not accepted by plaintiffs within ten (10) days from the date hereof.

2. This offer is intended to apply to the total amount of any judgment obtained by plaintiffs against one or both of the defendants, regardless of the claims and theory(ies) asserted by plaintiffs against the defendants, and regardless of the proration of liability between the defendants with respect thereto.

Centric orally gave a counteroffer for $1.4 million, which was rejected.

On October 8, the trial court granted the motion for summary judgment in favor of De Leuw. CDOT and De Leuw immediately attempted to withdraw the offer of judgment by a telephone call on that day and by formal letter on October 9. Knowing of the summary judgment, Centric accepted the offer of judgment despite De Leuw's and CDOT's attempted withdrawal. Centric filed the necessary documents with the District Court on October 9. A motion for an order directing entry of judgment was filed by Centric, but was denied by the trial court in an oral ruling. Centric then brought an original proceeding before this court.

The facts of this case raise two interrelated issues. First is the general question whether a defendant which has made an offer of judgment pursuant to the statute may withdraw that offer within ten days of making the offer. Second is the specific question whether an offer of judgment automatically is revoked if, within the ten-day period, the trial court enters summary judgment in favor of one of the two defendants which made a joint offer of judgment

pursuant to the statute. In this case, the trial court held that the defendants could not revoke the offer within the ten-day period but that entry of summary judgment for one defendant made the offer "ineffectual for all purposes." We agree that the offer was irrevocable during the ten-day period but reject the trial court's conclusion that its entry of summary judgment voided the offer.

## II.

We first address a preliminary matter of jurisdiction. The respondent trial court contends that the exercise of our jurisdiction under C.A.R. 21 is inappropriate since Centric could appeal the summary judgment order subsequent to trial. Both CDOT and Centric argue in favor of this court exercising its original jurisdiction and making the rule absolute. CDOT now wants the offer of judgment enforced and contends that it cannot settle unless De Leuw is bound by the joint offer of judgment. Both CDOT and Centric argue that it would be a waste of judicial resources to force them to go to trial.

▇▇▇ Whether to take jurisdiction over an original proceeding is entirely within this court's discretionary authority. *See Halaby, McCrea & Cross v. Hoffman*, 831 P.2d 902, 905 (Colo.1992) (*citing White v. District Ct.*, 695 P.2d 1133, 1135 (Colo. 1984)). An original proceeding is not a substitute for an appeal and in this case there are important reasons for exercising our original jurisdiction. Judicial economy favors the resolution of this matter on an original proceeding because, if the rule is made absolute, no trial is necessary. Further, the trial court's ruling raises substantial doubt as to the proper implementation of the statute authorizing offers of judgment. Since public policy favors the early resolution of disputes in the most expeditious and inexpensive method possible, it is appropriate to review this case promptly and to provide suitable guidance to the trial

---

1. This provision replaces C.R.C.P. 68, which contained virtually identical language. The analogous provision is still set forth in the federal Code of Civil Procedure and in many state Codes of Civil Procedure as Rule 68.

courts and the bar. Accordingly, we decline to dismiss our order to show cause.

### III.

### A.

Having found the exercise of our jurisdiction to be appropriate under C.A.R. 21, we now turn to the question of the revocability of an offer of judgment made pursuant to the statute. The parties to this action are in agreement that, generally, such an offer of judgment is not revocable within the ten-day period. We look for guidance to jurisdictions having similar statutes or rules in order to assess the correctness of the parties' position.

The general weight of precedents, as the parties have recognized, is in consensus that offers of judgment are irrevocable.[2] *See* 12 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3004 (1973) (and cases cited therein); 7 Part 2 James W. Moore, *Moore's Federal Practice* ¶ 68.05 (Rel. 89–2/91) (and cases cited therein). *See also, e.g., Mallory v. Eyrich,* 922 F.2d 1273 (6th Cir.1991); *Greenwood v. Stevenson,* 88 F.R.D. 225 (D.R.I.1980); *Rules v. Sturn,* 661 P.2d 615 (Alaska 1983); *Smith v. Kentucky State Fair Bd.,* 816 S.W.2d 911 (Ky.App.1991).

 ·We find this approach to be well-established and persuasive. Although this is the first time we have addressed this issue, prior precedent of the court of appeals has adopted the general rule. The court of appeals found that an offer of judgment, although rejected by the offeree the day after the offer was made, remains open for the entire ten-day statutory peri-

od. *Whitney v. Anderson,* 784 P.2d 830 (Colo.App.) *cert. denied* (1989). This interpretation of the statute regarding the ten-day period is convincing to us. *See also* 5 Robert M. Hardaway & Sheila K. Hyatt, *Colorado Civil Rules Annotated* § 68.1 (2d ed. 1985) (under former C.R.C.P. 68, "the offeror has no power to withdraw his offer, once made, and ... the offeree has 10 days after the offer is served upon him in which to accept, and the offer can be deemed to be withdrawn only after there has been a failure to accept it") (citing Wright & Miller, *Federal Practice and Procedure* § 3004, but noting that the opposite result may be reached under contract principles).

 De Leuw acknowledges that offers of judgment are generally irrevocable, but argues that there are exceptions to the rule of irrevocability. It claims that, under contract principles, Centric's counteroffer operated as a rejection of the offer which cut short the ten-day statutory period. Because we adopt the court of appeals' ruling that an offer of settlement remains open for the entire ten-day period, regardless of whether the offer is rejected, however, we necessarily reject De Leuw's contention. We hold that there are no exceptions to the irrevocability of the offer of judgment.

 In our view, contract principles do not control this situation. An offer of judgment pursuant to section 13–17–202(3) is not a simple private offer of settlement. Rather, it invokes a special statutory process spelled out in clear and unambiguous language which can and should be enforced without engrafting contract principles onto it. The statute's purpose is to encourage

---

**2.** We are aware that there are a few jurisdictions which have found that an offer of judgment is revocable. *See, e.g., T.M. Cobb Co., Inc. v. Superior Ct.,* 36 Cal.3d 273, 204 Cal.Rptr. 143, 682 P.2d 338 (1984); *Everson v. Kapperman,* 343 N.W.2d 19 (Minn.1984); *Sonnenburg v. Grohskopf,* 144 Wis.2d 62, 422 N.W.2d 925 (1988). These decisions are distinguishable, however, on various grounds. In *Sonnenburg,* 422 N.W.2d 925, the Wisconsin appellate court found a statute similar to the Colorado statute to be ambiguous in that it did not prohibit revocation. Thus it held that the contract right of revocation should be effective to promote

settlement by ensuring offerors are not locked into the offer. In *Cobb,* 682 P.2d 338, the period within which the offeree must respond is thirty days. Applying contract principles, the California appellate court allowed negotiations, including revocation of the offer, during this extended time period in order to most effectively encourage settlement. In *Everson,* 343 N.W.2d 19, the statute lacked a finite time period for acceptance and the offer at issue was two years old. We find the reasoning behind these cases to be unpersuasive and to ignore other important considerations, which are discussed in the text.

reasonable settlement offers by all parties. *See Mallory*, 922 F.2d at 1277; *Janicek v. Hinnen*, 34 Colo.App. 68, 73, 522 P.2d 113, 116 (1974). In order to accomplish this purpose, several key characteristics of an offer made pursuant to section 13–17–202(3) come into play.

First, the statute creates incentives to settle. Section 13–17–202(3) contains a cost-shifting provision which states, "If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree shall pay the costs incurred after making of the offer." Both sides are required to assess carefully any offer of judgment. An offeree's refusal of a reasonable offer shifts the cost of going forward with the lawsuit to the offeree, "who becomes exposed to the prospect of being saddled with the substantial expense of trial." *Mallory*, 922 F.2d at 1278. Likewise the offeror has an incentive to make a reasonable offer. The offeror will be bound by the offer if it is accepted and the offeror can hope to recover its costs of going forward if, at trial, the offeree ultimately recovers less than the amount of the offer.

Second, the act provides very clear and definite steps to follow. The provisions of section 13–17–202(3) are mandatory and non-discretionary in several respects. *Mallory*, 922 F.2d at 1278–79. The parties, not the court, are the players under the statute, and the operation of the statute takes place largely outside the aegis of the trial court. Unless the offer is accepted or the amount recovered at trial is less than the offer, nothing is filed with the court concerning an offer of judgment. Furthermore, the court is required to award costs if the offer is refused and the subsequent trial judgment obtained is less favorable to the offeree than the offer, whether the offeree prevails or not. The court is not permitted to award costs to the prevailing party. The court also has no discretion to alter or modify the offer of judgment if accepted by the offeree, and the clerk must enter the judgment under the plain language of the statute, which states that "the clerk shall enter judg-

ment." The use of the word "shall" within a statute is presumed to be mandatory. *People v. Clark*, 654 P.2d 847, 848 (Colo. 1982).

These characteristics, unique to a section 13–17–202(3) offer, cause this type of offer to be a matter of plain statutory interpretation, not a question of contract law. Thus, in interpreting the statute, we find that the statute states that if the offer is accepted "within ten days" of its making, judgment must be entered. We therefore hold that offers of judgment are not revocable by the offeror for the statutory period of ten days. If there has been an acceptance within that time, judgment automatically should be entered.

### B.

Having established the irrevocability of the offer, we examine the voidability of the offer by the entry of summary judgment for one of the two offerors-defendants within the ten-day period. In this case, the trial court found that its summary judgment order rendered "ineffectual" the offer of judgment. In so ruling, the trial court relied on *Preuss v. Stevens*, 150 Ariz. 6, 721 P.2d 664, 665 (Ariz.App.1986), where the Arizona appellate court found that summary judgment voided an offer of judgment under an analogous statute. The trial court in the case now before us concluded that enforcing the offer of judgment would not be consistent with the purpose of section 13–17–202 to encourage settlement since the summary judgment "destroys the purposes for which the rule was designed." Instead, the trial court stated:

> If defendants can be assured that an intervening dismissal would make an offer under § 13–17–202, C.R.S. ineffectual, they could make such offers freely and in good faith in the hopes of putting an end to the litigation, but without the spectre that such an offer could deprive them of the benefit of being dismissed from the action.

We decline to adopt the *Preuss* approach. Although we agree that the purpose of our statute like that of Arizona is to encourage settlement, we disagree with the Arizona

court's assessment of the likely impact caused by allowing a summary judgment order to preempt an offer of judgment. We find that the purpose of the statute is served by enforcing the judgment acceptance. The defendants De Leuw and CDOT certainly knew of the pending summary judgment motion when the offer of judgment was made. At that time, they could have chosen to make a private offer of settlement with a caveat as to the outcome of the summary judgment motion. They decided to tender an offer of judgment under the statute, however, which acted to bind Centric with respect to costs regardless of whether Centric accepted the offer. Centric, of course, had no control over De Leuw's and CDOT's decision to make an offer of judgment or the timing of that offer. De Leuw and CDOT should not be able to put Centric at risk without any risk to themselves. Here, De Leuw and CDOT assumed the calculated risk that a favorable decision of the pending summary judgment motion might negate the need for settlement, and they lost their gamble.

Finally, as noted above, the court has a very limited role to play under the statute. It cannot initiate settlement proceedings under the statute and it has only ministerial duties to perform in enforcing the statute. It enters judgment if the offer is accepted and it awards costs if the amount recovered at trial is less than the offer. To allow the trial court's order to preempt the running of the ten-day period would be completely contrary to the statute. The statute would lose the definitiveness and predictability which it needs to function as an effective method of settlement. If a summary judgment order served to void an offer of judgment, then presumably other significant court orders (such as an order resolving a discovery dispute) could be argued to have the same effect. If this were true, the offer-of-judgment process would be seriously impaired.

 We hold that an offer under section 13–17–202(3) is both irrevocable and absolute for the ten-day statutory period. Centric's attempted acceptance was effective because it was made within ten days of the offer. The trial court erred as a matter of law in holding that the entry of summary judgment for De Leuw voided the offer of judgment. The rule is made absolute, and the case is remanded with directions to enter judgment for Centric and against De Leuw and CDOT pursuant to the statute.

ERICKSON, J., concurs.

VOLLACK, J., concurs in part and dissents in part, and SCOTT, J., joins in the concurrence and dissent.

Justice ERICKSON concurring:

I agree with the majority's analysis in most respects, including its determination that offers of judgment made pursuant to section 13–17–202(3), 6A C.R.S. (1992 Supp.), are at all times irrevocable. I write separately, however, to emphasize that although the offer of judgment was irrevocable and binding at the time of acceptance, there are some circumstances in which offers of judgment made pursuant to the statute are terminated and not capable of acceptance. In my view, the trial court had the authority and the right to enter a summary judgment in favor of De Leuw at any time prior to the acceptance of the offer of judgment by Centric. At no point was the trial court stripped of jurisdiction or the right to determine and enter a valid and effective summary judgment. However, the entry of summary judgment did not invalidate the offer of judgment made pursuant to the statute. Prior to the expiration of the offer, Centric was free to either accept or reject it.

The majority properly concludes that offers of judgment made pursuant to section 13–17–202(3) are always irrevocable. Maj. op. at 9. However, the majority fails to recognize that contract principles control the underlying basis for the irrevocability of offers of judgment.[1] Accordingly, in my

1. Offers of judgment are irrevocable primarily because they are option contracts. The offeror receives valuable consideration in exchange for the making of the offer. *See Rules v. Sturn,* 661 P.2d 615, 618 (Alaska 1983) (stating that an offer of judgment is an offer for a period of

view, contract principles relating to option contracts provide valuable guidance on when an offer of judgment tendered pursuant to section 13–17–202(3) is terminated.

Although an option contract is an irrevocable offer, the offer itself, under certain circumstances, may be terminated. An irrevocable offer is terminated by the lapse of time, death, or destruction of a person or thing essential for the performance of the proposed contract, or a supervening legal prohibition relating to the proposed contract. *See Matter of Estate of Jorstad,* 447 N.W.2d 283, 286 (N.D.1989); John D. Calamari & Joseph M. Perillo, Contracts § 2–25 at 124–25 (3rd ed. 1987); Restatement (Second) of Contracts § 37 (1981).

The facts of this case present no basis for finding that the offer of judgment made jointly by CDOT and De Leuw was terminated. The irrevocable offer from CDOT and De Leuw had not terminated due to a lapse of the ten-day period provided in both the offer and the statute.[2] Nor had the offer terminated due to the destruction of a party or the subject matter of the proposed contract.[3] Finally, there was no supervening illegality that defeated the purpose for which the offer of judgment was made. Accordingly, while an irrevocable offer made pursuant to section 13–17–202(3) may be terminated in certain instances, none of those conditions are present in this case. I agree, therefore,

with the majority that the offer of judgment was not terminated when the trial court entered summary judgment in favor of De Leuw and that the offer remained open at the time Centric accepted it.

In my view, the dissent misinterprets the majority's holding. While the offer of judgment remains outstanding, the trial court is not stripped of the power to issue summary judgment in favor of De Leuw, or from issuing any other ruling affecting the rights of the parties. The statute provides no vehicle or requirement for notifying the trial court that an offer of judgment is outstanding, nor does it provide that the trial court lacks power to decide issues relating to the substantive rights of the parties while an offer is outstanding.

Any trial court ruling made during the period of time the offer is outstanding is effective and valid, subject only to a possibility that the ruling will be of no consequence if the offer of judgment is accepted. If Centric had not accepted the defendants' offer of judgment, the trial court's summary judgment in favor of De Leuw would have been in effect. *Cf. Davidson Chevrolet, Inc. v. City & County of Denver,* 138 Colo. 171, 175, 330 P.2d 1116, 1118 (1958) (stating that even irregular and erroneous judgments retain their force and have effect until modified by the trial court, or until vacated pursuant to new trial procedures, or until reversed by an appellate

time fixed by rule of law that is comparable to an option for consideration); Morris K. Udall, *May Offers of Judgment Under Rule 68 Be Revoked Before Acceptance?,* 19 F.R.D. 401, 403 (1957) (stating that offers of judgments are "like an option that you have for ten days based upon a valuable consideration").

2. Had Centric not accepted the offer of judgment within the ten-day period, the offer of judgment would have terminated due to a lapse of time.

3. The summary judgment entered by the trial court did not remove De Leuw from the action, nor did it destroy the object of the irrevocable offer, the pending lawsuit. At any time prior to a final resolution of the issues, the trial court's grant of summary judgment in favor of De Leuw could be reversed and De Leuw ordered to trial. No final order was entered pursuant to C.R.C.P. 54(b), and the trial court retained pow-

er to reverse the summary judgment and order De Leuw to trial. *See Broadway Roofing & Supply, Inc. v. District Court,* 140 Colo. 154, 342 P.2d 1022 (1959). Similarly, either the court of appeals or this court could, on appeal, reverse the trial court's entry of summary judgment and return the case for a new trial.

De Leuw, acting in its own best interests, could decide at any point that settling the claims against it was preferable to running the risk of a future adverse ruling by either the trial court, the court of appeals, this court, or potentially a jury. The trial court's order of summary judgment did not remove De Leuw from the action. Rather, De Leuw remained a party to the action that could enter into an offer of judgment under section 13–17–202 at any time within ten days prior to the start of the trial. The time period in which De Leuw might enter into an offer of judgment pursuant to the statute might even include a period of time after the trial court entered summary judgment in De Leuw's favor.

court in review proceedings), *cert. denied,* 359 U.S. 926, 79 S.Ct. 609, 3 L.Ed.2d 629 (1959). However, because no final appealable judgment had been entered prior to Centric's acceptance of the defendants' offer, any rulings of the court remained open to modification, reconsideration, and withdrawal. *See* C.R.C.P. 54(b); *see, e.g., Manka v. Martin,* 200 Colo. 260, 264, 614 P.2d 875, 878 (1980) (stating that under C.R.C.P. 54(b), when a summary judgment disposes of less than the entire action, the judgment is not final unless the trial court expressly determines that there is no just reason for delay and directs the entry of a final judgment), *cert. denied,* 450 U.S. 913, 101 S.Ct. 1354, 67 L.Ed.2d 338 (1981); *Broadway Roofing & Supply, Inc. v. District Court,* 140 Colo. 154, 158, 342 P.2d 1022, 1025 (1959) (stating that C.R.C.P. 54(b) expressly provides that in the absence of an express direction by the trial court for the entry of final judgment, any order or other form of decision which adjudicates less than all the claims shall not terminate the action as to any of the claims and the order or other form of decision is subject to revision at any time before entry of judgment adjudicating all of the claims); *see also* C.R.C.P. 59; C.R.C.P. 60; *Smith v. Whitlow,* 129 Colo. 239, 244, 268 P.2d 1031, 1034 (1954) (holding that where an action has been tried to the court without a jury, and a motion for new trial has been filed after entry of findings and judgment, the trial court has the power to vacate the original findings and judgment, reverse itself, and enter judgment in favor of the opposite party); *Goodwin v. Eller,* 127 Colo. 529, 534, 258 P.2d 493, 495 (1953) (same); *see generally* 6-6A James W. Moore et al., Moore's Federal Practice ¶¶ 54.28, 59.11, 59.12 (2d ed. 1993). When Centric accepted the offer of judgment, the trial court was required, pursuant to the explicit terms of section 13–17–202(3) to enter judgment against CDOT and De Leuw. That judgment would become the final judgment of the trial court and would nullify all prior inconsistent orders.

The offer of judgment given by CDOT and De Leuw to Centric pursuant to section 13–17–202(3) was irrevocable for ten days. However, the offer remained subject to termination under ordinary contract rules applicable to the termination of option contracts. While the offer was outstanding, the trial court was not stripped of its power to decide De Leuw's summary judgment motion, or to issue other rulings affecting the litigation. The trial court erred in not entering judgment against CDOT and De Leuw pursuant to the explicit terms of section 13–17–202(3). I concur with the majority's decision to remand to the trial court with directions to enter judgment in favor of Centric on the offer of judgment.

Justice VOLLACK dissenting only as to part III:

In declining to apply fundamental principles of contract law to offers of settlement, the majority concludes that, pursuant to section 13–17–202(3), 6A C.R.S. (1992 Supp.), "an offer of settlement remains open for the entire ten-day period, regardless of whether the offer is rejected." Maj. op. at 946. I disagree. I conversely find that well settled canons of statutory construction and fundamental principles of contract law dictate that an offer of settlement made pursuant to section 13–17–202(3) is revocable. I also conclude that, in the present case, Centric–Jones rejected the settlement offer made by the defendants, and that, once rejected, Centric–Jones could not subsequently accept the offer. Alternatively, I conclude that the district court order granting summary judgment in favor of De Leuw removed De Leuw from the action and destroyed Centric's power to accept the joint offer of settlement. I respectfully dissent.

I.

In 1987, Centric–Jones Co. (Centric) entered into a contract with the Colorado State Department of Highways (the Department), wherein Centric agreed to act as a general contractor for various construction projects planned at the intersection of

6th Avenue and interstate highway I–25.[1] The Department retained Parsons De Leuw, Inc. (De Leuw), to perform engineering services on the same construction projects.

As a result of its contract with the Department, Centric entered into various subcontracts for performance of services related to the construction projects. One of the subcontractors, Fought & Co., filed an action against Centric, seeking damages incurred when the projects fell behind schedule. Fought & Co. prevailed in its action and obtained a judgment against Centric. In December 1991, Centric commenced an action against the Department, alleging that the Department had breached its contract with Centric. Centric sought to recover damages from the Department for which Centric was liable as a result of the action commenced by Fought & Co.

In March of 1992, Centric added De Leuw as a defendant to its action against the Department. Centric alleged that the delays in the projects were caused by errors made by De Leuw in preparing documents as part of the design and construction process. On June 24, 1992, De Leuw filed a motion for summary judgment, contending that Centric's claims against it were barred by the statute of limitations.

On September 23, 1992, Centric, the Department, and De Leuw participated in a settlement conference during which Centric suggested that the action be settled for approximately $1,780,000. The Department and De Leuw did not respond to Centric's demand at that time.

On September 30, 1992, the Department and De Leuw served upon Centric a joint offer of settlement in the amount of $750,-000, pursuant to section 13–17–202(3). On October 1, Centric submitted a counteroffer of settlement in an amount of approximately $1,438,000.[2]

On October 8, 1992, the district court granted De Leuw's motion for summary judgment. De Leuw in turn informed Centric via telephone that De Leuw considered all prior settlement negotiations and offers null and void. De Leuw additionally sent a letter by facsimile to Centric, confirming De Leuw's position. On the following day, October 9, both De Leuw and the Department served upon Centric a "Withdrawal of Joint Offer of Settlement." At approximately 4:00 p.m. on October 9, Centric served an acceptance of the joint offer of settlement on De Leuw. Centric also sought an order from the district court directing the clerk of the court to enter judgment upon the accepted joint offer of settlement.

On October 14, 1992, the district court held a hearing on Centric's motion for an order directing entry of judgment. During the hearing, the district court found that the attempted withdrawal of the joint offer of settlement preceded Centric's acceptance of the offer. The district court stated "that an offer under Subsection 3 of 13–17–202 also should be seen to operate as an 'option for consideration' and that the attempted withdrawal by the Defendants prior to the expiration of ten days after the service of the offer is ineffectual." The district court ultimately concluded, however, that, when it dismissed De Leuw, "the joint settlement offer could not be seen as being effectual, since there was not another Defendant besides the State to be involved in the settlement."

Centric subsequently petitioned this court for a rule to show cause pursuant to C.A.R. 21. We issued a rule to show cause, and the majority now makes the rule absolute, finding that the district court erred as a matter of law. Maj. op. at 944. I disagree, and would hold that both canons of statutory construction and principles of contract law render the joint offer of settle-

---

**1.** The facts presented were culled from several district court orders and from an affidavit of Eugene R. Commander, counsel for Parsons De Leuw, Inc., as no record of proceedings was filed in this case.

**2.** Centric did not reference a counteroffer in its petition; however, both the October 14 district court order and the Commander affidavit reference a counteroffer submitted by Centric on October 1.

ment ineffectual as Centric rejected the offer prior to its attempted acceptance.

## II.

## A.

As the majority notes, the issue we must address is whether an offer of judgment made pursuant to section 13–17–202(3) is revocable. *See* maj. op. at 946. The majority states that section 13–17–202(3) provides in part:

At any time more than ten days before the trial begins, a party defending against a claim may serve upon the adverse party an offer of settlement to the effect specified in his offer, with costs then accrued. If within ten days after the service of the offer, the adverse party serves written notice that the offer is accepted, either party may then file the offer and notice of acceptance, together with proof of service thereof, and thereupon the clerk shall enter judgment[.]

Maj. op. at 944–45 (quoting section 13–17–202(3), 6A C.R.S. (1992 Supp.)). That section, titled "Award of actual costs when offer of settlement was made," additionally provides that:

*An offer not accepted shall be deemed withdrawn and evidence thereof is not admissible except in a proceeding to determine costs.* If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree shall pay the costs incurred after making of the offer. *The fact that an offer is made but not accepted does not preclude a subsequent offer.* When the liability of one party to another has been determined by verdict or order or judgment, but the amount or extent of the liability remains to be determined by further proceedings, the party adjudged liable may make an offer of settlement, which shall have the same effect as an offer made before trial (except with respect to costs already incurred) if it is served within a reasonable time not less than ten days prior to the commencement of hearings to determine the amount of extent of liability.

§ 13–17–202(3), 6A C.R.S. (1992 Supp.) (emphasis added).

The section is silent as to whether offers of judgment are revocable. In order to resolve the issue, we are thus required to interpret and construe subsection (3). *See Watters v. Pelican Int'l, Inc.*, 706 F.Supp. 1452 (D.Colo.1989); *Matter of Estate of Roybal*, 826 P.2d 1236 (Colo.1992). The majority, however, conducts a truncated analysis of that portion of the statute quoted in its opinion. The majority also declines to apply principles of contract law, and relies instead on *Whitney v. Anderson*, 784 P.2d 830 (Colo.App.), *cert. denied* (1989), *Mallory v. Eyrich*, 922 F.2d 1273 (6th Cir.1991), and *Janicek v. Hinnen*, 34 Colo.App. 68, 522 P.2d 113 (1974), in reaching its conclusion. Maj. op. at 946–47. I do not find this approach persuasive.

*Whitney* and *Janicek* were decided under C.R.C.P. 68 and prior to the adoption of section 13–17–202(3). In *Whitney*, the court of appeals was called on to review a post-trial award of costs in a negligence action. *Whitney*, 784 P.2d at 831–32. Pursuant to C.R.C.P. 68, the trial court in *Whitney* awarded the plaintiff costs of $569.62 and the defendant costs of $7,139.77. *Id.* at 832. On appeal, the plaintiff contended "that the defendant's offer of judgment was untimely under C.R.C.P. 68, thus precluding the trial court from applying the cost-shifting provisions of the rule." *Id.*

The *Whitney* court stated that, under C.R.C.P. 68, a plaintiff had ten days in which to accept an offer of judgment once such an offer was extended. *Id.* The *Whitney* court held that, based on the unique circumstances surrounding the offer, the defendant's offer was not untimely under C.R.C.P. 68. *Id.* The *Whitney* court did not expressly address the issue of whether offers made pursuant to C.R.C.P. 68 were revocable.

The *Janicek* court confronted the issue of whether the defendants had properly preserved their right to appeal an order of costs assessed against them pursuant to C.R.C.P. 68. The *Janicek* court stated that the purpose of C.R.C.P. 68 was "to encour-

age acceptance of reasonable offers of judgment." *Id.* at 73, 522 P.2d at 116. The *Janicek* court concluded that the defendant's appeal was timely filed, and that the plaintiff was entitled to receive costs under the rule. *Id.* Like the *Whitney* court, the *Janicek* court did not squarely address the issue of whether offers of judgment under C.R.C.P. 68 were revocable.

Since neither the *Whitney* nor the *Janicek* courts engaged in statutory construction of section 13–17–202(3) in order to determine whether offers of settlement are revocable, I do not find that either case provides guidance for resolution of the issue presently before the court. I find that a review of the section's history, including the rule of procedure, provides an appropriate basis for an interpretation of the section. I also find that *Mallory* supports the application of principles of contract law in the interpretation process.

### B.

Colorado Rule of Civil Procedure 68, titled "Offer of Judgment," provided a means by which courts could assess costs against a litigant who rejected a reasonable offer of settlement. *See* C.R.C.P. 68. The literal language of the rule was substantially similar to subsection (3) of section 13–17–202. As expressed in *Janicek*, the purpose of C.R.C.P. 68 was to encourage acceptance of reasonable offers of settlement. *Janicek*, 34 Colo.App. at 73, 522 P.2d at 116. C.R.C.P. 68 was repealed on July 12, 1990.

On May 31, 1990, the General Assembly enacted Senate Bill 90–150, titled "Courts and Court Procedure." In section 1 of the act, the General Assembly declared that

the legal system needs to be improved in order to provide justice for all citizens. The general assembly recognizes that litigants often encounter an unreasonable amount of delay in the resolution of disputes and in obtaining settlement or a judicial determination of their legal actions.... The general assembly finds that the costs associated with delays in the resolution of civil actions and from late payments of judgments makes the prices of goods and services higher than they would be otherwise. The general assembly finds that Colorado's legal system requires these changes in order to improve Colorado's economic competitiveness in an era of global markets where foreign competitors typically have substantially lower legal costs embedded in the goods and services they produce. The general assembly finds that the changes encompassed in this act are designed to make the legal system more effective and efficient by discouraging the filing of unnecessary litigation, by encouraging settlement, and by encouraging more timely resolution of disputes[.]

Act approved May 31, 1990, ch. 100, sec. 1, 1990 Colo.Sess.Laws 848. In section 14 of the act, the General Assembly adopted section 13–17–202. Ch. 100, sec. 14, § 13–17–202, 1990 Colo.Sess.Laws 852. The section currently appears in part 2 of article 17, which is titled "Attorneys Fees in Civil Actions in General." § 13–17–202, 6A C.R.S. (1992 Supp.). Part 2 consists of three sections, all of which concern awards of attorneys fees and costs in certain cases. §§ 13–17–201 to –203, 6A C.R.S. (1987 & 1992 Supp.). Unlike the former rule 68, section 13–17–202, as enacted in 1990, contains two additional subsections which provide as follows:

(1)(a) Notwithstanding any other statute to the contrary, in any civil action of any nature commenced or appealed in any court of record in this state:

(I) If the plaintiff makes an offer of settlement which is rejected by the defendant and the plaintiff recovers a final judgment in excess of the amount offered, then the plaintiff shall be awarded actual costs accruing after the offer of settlement to be paid by the defendant.

(II) If the defendant makes an offer of settlement which is rejected by the plaintiff and the plaintiff does not recover a final judgment in excess of the amount offered, then the defendant shall be awarded actual costs accruing after the

offer of settlement to be paid by the plaintiff.

(b) For purposes of this section, "actual costs" shall not include attorney fees.

(2) When comparing the amount of any offer of settlement to the amount of a final judgment actually awarded, any amount of the final judgment representing interest subsequent to the date of the offer in settlement shall not be considered.

§ 13–17–202(1), (2), 6A C.R.S. (1992 Supp.). Neither the court of appeals nor this court has construed section 13–17–202.

Our primary task in construing a statute is to give effect to the intent of the General Assembly. *Dunlap v. Colorado Springs Cablevision,* 829 P.2d 1286 (Colo.1992). "Where a statute is silent as to a particular issue, questions of interpretation are illuminated by legislative intent." *Watters v. Pelican Int'l, Inc.,* 706 F.Supp. 1452, 1456 (D.Colo.1989). We first look to the language of the statute itself, and give effect to statutory terms in accordance with their commonly accepted meanings. *Boulder County Bd. of Equalization v. M.D.C. Constr. Co.,* 830 P.2d 975 (Colo.1992). However, technical terms or terms of art used in a statute are presumed to have their technical meaning. *Huffman v. Caterpillar Tractor Co.,* 908 F.2d 1470, 1476 (10th Cir.1990) (citing *Board of Assessment Appeals v. Arlberg Club,* 762 P.2d 146, 152 (Colo.1988)).

Section 13–17–202(3) provides:

At any time more than ten days before the trial begins, a party defending against a claim may serve upon the adverse party an offer of settlement to the effect specified in his offer, with costs then accrued. If within ten days after the service of the offer, the adverse party serves written notice that the offer is accepted, either party may then file the offer and notice of acceptance, together with proof of service thereof, and thereupon the clerk shall enter judgment. An offer not accepted shall be deemed withdrawn and evidence thereof is not admissible except in a proceeding to determine costs. If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree shall pay the costs incurred after making of the offer. The fact that an offer is made but not accepted does not preclude a subsequent offer. When the liability of one party to another has been determined by verdict or order or judgment, but the amount or extent of the liability remains to be determined by further proceedings, the party adjudged liable may make an offer of settlement, which shall have the same effect as an offer made before trial (except with respect to costs already incurred) if it is served within a reasonable time not less than ten days prior to the commencement of hearings to determine the amount of extent of liability.

§ 13–17–202(3), 6A C.R.S. (1992 Supp.). The section does not expressly address whether offers of settlement are revocable if made within a ten-day period following service of the offer upon the adverse party. The section merely provides that a party *may* make an offer of judgment more than ten days prior to the commencement of trial. The section also provides that "[a]n offer not accepted shall be deemed withdrawn," and that the making of one offer not accepted does not preclude a party from making a second offer. *Id.* The terms "offer" and "acceptance" are terms of art; in order to give effect to the legislative intent expressed in the Legislative Declaration of the Act, we must turn to fundamental principles of contract law.

Application of the law of contracts to settlements is consistent with this court's previous decisions regarding settlements generally.[3] *See Van Schaack Holdings,*

---

3. *Mallory v. Eyrich,* 922 F.2d 1273 (6th Cir. 1991), is instructive on this point. *Mallory* involved an interpretation of Fed.R.Civ.P. 68 in an action filed by a group of residents challenging a county-wide scheme for election of municipal court judges. *Id.* at 1275. The defendants served an offer of settlement on the plaintiffs, which the plaintiffs accepted; the defendants subsequently moved to have a judgment entered on the offer set aside pursuant to Fed.R.Civ.P. 60(b)(6). The *Mallory* court was confronted with the issue of whether a rule 60(b) order setting aside a rule 68 judgment was immediately appealable. *Id.* at 1277. The *Mallory* court

*Ltd. v. L.C. Fulenwider,* 798 P.2d 424, 431 (Colo.1990) ("A settlement results from a meeting of the minds and an exchange of sufficient consideration."); *Trimble v. City and County of Denver,* 697 P.2d 716 (Colo. 1985) (applying contract principles to analysis of a covenant not to sue); *Cross v. District Court,* 643 P.2d 39, 41 (Colo.1982) ("A compromise and settlement is, in effect, a contract to end judicial proceedings."); *H.W. Houston Constr. Co. v. District Court,* 632 P.2d 563, 565 (Colo.1981) ("A settlement and compromise is, in effect, a contract to end judicial proceedings. In order for a settlement to be binding and enforceable, there must be a 'meeting of the minds' as to the terms and conditions of the compromise and settlement." (citation omitted)). Additionally, "the General Assembly has specifically provided that in the construction of statutes the common law shall remain in full force until repealed by legislative authority." *Powder Horn Constructors, Inc. v. City of Florence,* 754 P.2d 356, 369 (Colo.1988) (relying on section 2-4-211, 1B C.R.S. (1980)). Since section 13-17-202 does not contain a provision repealing the common law of contracts, I find the common law principles useful in construing the statute in the present case.

It is fundamental that an offer gives an offeree a power to accept the offer. *Restatement (Second) of Contracts* § 35(1) (1981) [hereinafter *Restatement*]. Accordingly, "[a] contract cannot be created by acceptance of an offer after the power of acceptance has been terminated." *Restatement* § 35(2). A power of acceptance may be terminated by either rejection of the offer, or by a counteroffer. *Restatement* §§ 36, 38, 39. Thus, we have stated that, " '[w]hen an offer has been rejected it ceases to exist and cannot thereafter be accept-

ed.... This principle is most commonly illustrated where a counteroffer is made by offeree. This operated as a rejection of the original offer.' " *Baldwin v. Peters, Writer & Christensen,* 141 Colo. 529, 531-32, 349 P.2d 146, 147-48 (1960) (quoting 1 *Williston on Contracts* § 51); *see Nucla Sanitation Dist. v. Rippy,* 140 Colo. 444, 448, 344 P.2d 976, 979 (1959) (quoting *Hall v. Gehrke,* 117 Colo. 223, 185 P.2d 1016 (1947) (quoting *Salomon v. Webster,* 4 Colo. 353, 361 (1878))) (" ' "Upon this point the law is clear. Unless the proposition made by one is accepted by the other, *without any modification whatever,* no contract arises. In such case there is no concurrence of parties. 'If the acceptance modifies the proposition in any particular, it amounts to nothing more than a counter proposition. It is not in law an acceptance which will complete the contract.' " ' "); *Goodwin v. Eller,* 127 Colo. 529, 536-37, 258 P.2d 493, 496 (1953) (quoting *Iselin v. United States,* 271 U.S. 136, 46 S.Ct. 458, 70 L.Ed. 872 (1926) (" 'It is well settled that a proposal to accept, or an acceptance, upon terms varying from those offered, is a rejection of the offer, and puts an end to the negotiation, unless the party who made the original offer renews it, or assents to the modification suggested.' ").

Applied to the language of section 13-17-202(3), I conclude that offers of judgment are revocable. The common law rule provides that an offer creating a power of acceptance is terminated by either rejection or a counteroffer. Section 13-17-202(3) does not, by its terms, abrogate this common-law rule. The language of the section stating that "an offer not accepted shall be deemed withdrawn" and that an offer "made but not accepted does not preclude a subsequent offer" is consistent with appli-

did not address whether offers of settlement under rule 68 were revocable. Rather, after concluding that rule 60(b)(6) orders were appealable, the *Mallory* court considered the propriety of the order in that case. *Id.* at 1279. In so doing, the *Mallory* court stated:

In cases construing Rule 68 judgments where the parties disagree as to what was intended, the courts apply contract principles. See[,] for example, *Radecki v. Amoco Oil Co.,* 858 F.2d 397, 400 (8th Cir.1988) ("[t]o decide

whether there has been a valid offer and acceptance for the purposes of Rule 68, courts apply the principles of contract law"); *Johnson v. Univ. College of the Univ. of Alabama,* 706 F.2d 1205, 1209 (11th Cir.), *cert. denied,* 464 U.S. 994, 104 S.Ct. 489, 78 L.Ed.2d 684 (1983) (for a valid Rule 68 agreement to have been formed, there must be a "meeting of the minds" under elementary principles of contract law.)

cation of this rule. If a party serves an offer of settlement upon an adverse party who in turn either rejects the offer, or proposes a counteroffer, then the first offer is deemed withdrawn. The party serving the first offer of settlement is not precluded from making a second offer of settlement once the power of acceptance created in the first offer is terminated.

The gravamen of the section, and of part 2 of article 17 generally, is to govern both awards of costs and fees, and dispositions of cases wherein one party offers and the adverse party accepts an offer of judgment. Section 13–17–202, along with sections 13–17–201 and 13–17–203, effectuates the expressed legislative intent of encouraging settlement of cases in order to both reduce the costs of litigation and expedite relief to victims. *See* Act approved May 31, 1990, ch. 100, sec. 1, 1990 Colo.Sess. Laws 848. This intent is best effectuated by construing section 13–17–202(3) as permitting a flexible approach to settlement negotiations, affording litigants a greater opportunity to settle disputes. Construing the section to create a period in which an offer of settlement is irrevocable is not consistent with this intent insofar as it locks the parties into one offer of settlement; under this construction, neither party may be inclined to make or accept one such offer where there is no room to negotiate. I thus conclude that, in order to effectuate the General Assembly's intent, the statute does not mandate that offers of settlement, once made, are not revocable within a ten-day period.[4]

### C.

In the present case, De Leuw and the Department served an offer of settlement

---

**4.** I similarly conclude that offers of settlement made pursuant to section 13–17–202(3) do not create option contracts under the terms of the section. The *Restatement* defines option contracts as follows:

(1) An offer is binding as an option contract if it
(a) is in writing and signed by the offeror, recites a purported consideration for the making of the offer, and proposes an exchange on fair terms within a reasonable time; or
(b) is made irrevocable by statute.
(2) An offer which the offeror should reasonably expect to induce action or forbear-

pursuant to section 13–17–202 on Centric on September 30, 1992, in the amount of $750,000. On October 1, Centric submitted a counteroffer of settlement in the amount of approximately $1,438,000. By submitting a counteroffer, Centric terminated its power to accept the offer of settlement served by the Department and De Leuw on September 30. Neither the Department nor De Leuw served a second offer of settlement on Centric. Thus, on October 9, no offer of settlement by the Department and De Leuw existed, giving Centric the power of acceptance.

### III.

After finding that offers of settlement are irrevocable under section 13–17–202(3), the majority concludes that "[t]he trial court erred as a matter of law in holding that the entry of summary judgment for De Leuw voided the offer of judgment." Maj. op. at 13. I disagree. Conversely, I conclude that the district court correctly found that the offer of settlement was ineffectual because: (1) De Leuw and the Department, by withdrawing their joint offer of settlement, revoked the joint offer of settlement; and (2) such a finding is consistent with the legislative declaration of intent underlying section 13–17–202.

It is well settled that an offeree's power of acceptance is terminated when an offeror manifests an intent not to enter into the contract. *Restatement* § 42 (defining revocation by offeror). Thus, "[t]he word 'revoke' is not essential to a revocation. Any clear manifestation of unwillingness to en-

ance of a substantial character on the part of the offeree before acceptance and which does induce such action or forbearance is binding as an option contract to the extent necessary to avoid injustice.

*Restatement (Second) of Contracts* § 87 (1981). The section neither expressly designates that offers of settlement create option contracts, nor implies that such offers, once made, are held open in the absence of consideration for the option. Since Centric gave no consideration to De Leuw or to the Department, I find that an option contract was not created in this case.

ter into the proposed bargain is sufficient." *Id.* at cmt. d.

In the present case, both the Department and De Leuw served a "Joint Offer of Settlement" upon Centric on September 30, 1992. On October 8, 1992, De Leuw informed Centric that it considered all prior settlement negotiations and offers null and void on the ground that the district court granted summary judgment in favor of De Leuw. On October 9, 1992, both De Leuw and the Department served upon Centric a "Withdrawal of Joint Offer of Settlement." Centric subsequently attempted to accept the joint offer of settlement. I find that Centric's acceptance is invalid, on the ground that *both the Department and De Leuw*—the only defendants in this action—manifested an unequivocal intent not to enter into the proposed joint offer of settlement prior to Centric's attempted acceptance.[5] Their manifestation revoked the joint offer, thus terminating its existence.

Additionally, I conclude that the district court order granting summary judgment in favor of De Leuw on October 8, 1992, had the effect of both removing De Leuw from the action as a "party" and destroying Centric's power to accept the joint offer of settlement. I find that to hold otherwise ignores the express legislative intent of section 13–17–202.

As previously discussed, the legislative intent underlying section 13–17–202 states

> that litigants often encounter an unreasonable amount of delay in the resolution of disputes and in obtaining settlement or a judicial determination of their legal actions.... [T]he changes encompassed in this act are designed to make the legal system more effective and efficient by discouraging the filing of unnecessary litigation, by encouraging settlement,

and by encouraging more timely resolution of disputes.

The majority's holding—that an offer of settlement remains in effect for a predetermined period of time, and that an entry of summary judgment in favor of a party during that interval has no effect—defeats the legislative goal of timely resolution of disputes by imposing a stasis on the litigation and stripping the district court of any power to resolve a dispute while an offer of settlement remains open.[6] *See* maj. op. at 947–48. This conclusion is not supported by the plain language of section 13–17–202. The section does not provide that offers of settlement shall remain open for a defined interval, during which time a district court may not enter summary judgment in favor of a party. Recognition of the district court's power to grant summary judgment permits resolution of disputes in a timely and cost-effective manner. *See Preuss v. Stevens,* 150 Ariz. 6, 721 P.2d 664, 665 (Ariz.Ct.App.1986) (holding that a trial court order granting summary judgment prior to acceptance of an offer of settlement nullified the offer of settlement in a case where summary judgment was entered the day before a party attempted to accept an offer of settlement); *see, e.g., Braham v. Carncross,* 514 So.2d 71 (Fla. Dist.Ct.App.1987) (holding that a party could not accept an offer of settlement after entry of a jury verdict on the ground that it would totally defeat the ends of justice and allow a mockery of the judicial system).

### IV.

Based on the foregoing reasons, I conclude that Centric could not accept the joint offer of settlement on October 9, 1992, and

---

5. Additionally, I find an alternate basis for this holding premised on the rule that, when acceptance is conditioned on the availability of a party, then the unavailability of that party will terminate the offeree's power to accept. *See* 1 *Williston on Contracts* § 5.1, at 625 (1990). Thus, as a joint offer of settlement, I find the "availability" of all of the defendants in the action to be a condition precedent to acceptance of the joint offer.

6. The parties do not argue, and therefore I do not consider, whether this holding impermissibly restricts the inherent power of district courts to resolve disputes. *See Halaby, McCrea & Cross v. Hoffman,* 831 P.2d 902, 907 (Colo. 1992) ("The inherent powers which courts possess consist of all powers reasonably required to enable a court to efficiently perform its judicial functions."); *Mizar v. Jones,* 157 Colo. 535, 537, 403 P.2d 767, 769 (1965) (holding that courts exist to settle disputes between parties).

that the district court order granting summary judgment in favor of De Leuw was appropriate. Accordingly, I find that the district court did not err in its determination that "the joint settlement offer could not be seen as being effectual." I would discharge the rule to show cause.

I am authorized to say that Justice SCOTT joins in this concurrence and dissent.

